VISO *v.* ROIG.

APPEAL from the District Court of Humacao.

No. 290.—Decided November 10, 1908.

IMPROVEMENTS WHICH ARE USEFUL OR SERVE FOR AMUSEMENT—LESSEE—RE-
MOVAL OF IMPROVEMENTS.—A lessee has the same rights with respect to useful
improvements as those provided by section 487 of the Revised Civil Code for
a usufructuary.

ID.—CARRIAGE HOUSE—PUMP—BATH.—In the case at bar the lessee of a house,
upon vacating the same, took away the following improvements made by him:
A frame carriage house, a pump with a water tank and pipe connections, a

water-closet, a partition for a closet for servants' pantry, a frame partition and a door. The court held that the lessee had a right to remove such improvements made by himself, provided the removal thereof caused no damage to the property

The facts are stated in the opinion.

*Mr. Vias Ochoteco* for appellant.

*Mr. Aponte, Jr.,* for respondent.

Mr. Justice MacLeary delivered the opinion of the court.

This is a case originating in the District Court of Humacao in which the plaintiff, who is here the appellant, complains of the defendant, for removing from a rented house belonging to the plaintiff and occupied by the defendant, certain articles alleged to belong to the realty, and claiming damages in the sum of $525 and all costs of suit. A judgment was rendered on the 29th of February, 1908, finding the law and the facts in favor of the defendant, and adjudging that the plaintiff take nothing by his suit and pay all the costs accruing in the prosecution thereof. From this judgment this appeal was taken, and its correctness is now before us for review.

There is no question of jurisdiction properly presented in the record although the question was alluded to in the oral argument on the hearing had in this court. There is however, if the record is properly examined, no question in regard to the jurisdiction both of the subject matter and the person.

The plaintiff alleges in his complaint that he bought a house in Humacao, of which the defendant was at the time a tenant. That, on giving up the premises, the tenant took away from the building the following articles: A wooden carriage-house built in the yard; a pump placed upon the top of the cistern having a water tank on the flat roof of the house with its corresponding connection of pipes; a bath and connecting pipes; a water-closet; a partition of a privy for servants; a pantry; a wall separating the house from the court room, and an inner door of the house. These were shown by the evidence to be worth from $42 to $506.

The defendant admits taking them away but contends that he put them there and had a right to take them away, and besides had written permission from the owner through his agent to do so. This permission was given in the following letter:

"The Humacao Sugar Company, Pasto Viejo, Humacao, Puerto Rico: Particular. Humacao, Puerto Rico, 22d of June, 1907. Mr. Antonio Roig, present. My Dear Sir and Friend:.

"In reply to your kind letter of the 19th I beg to state that on my part there is no inconvenience in your withdrawing from the house those improvements made by you, provided said improvements are comprised in article 487 of the Civil Code.

I proposed to Mr. Viso that he should pay for such improvements since they would be of benefit to him, but he has replied in an ambiguous manner wherefrom I infer that he does not desire them and leave you at liberty in order that you collect the amount in the manner most suitable for you.

Appreciating very much your courtesy and thanking you, I remain your faithful servant, Ramón Pou Ríos, P. P., José Toro Ríos."

The facts of the case are substantially detailed by three principal witnesses as follows:

TESTIMONY OF DON JUAN B. VISO, THE PLAINTIFF.

"That he lives in San Lorenzo and bought a house in Humacao from Mr. Pou, situated next the court house. That he saw the house before he bought it, and afterwards, through his representatives in Barcelona, bought the house just at it was. Then he gave Mr. Roig notice to vacate it, as he wished to occupy it himself. That Roig remained in the house three months longer and when he delivered the keys he, the plaintiff, called witnesses to see in what condition he had left the house. He requested them to go and see the perforated walls, that he had taken and carried away the water-closet and bath, the steps and various partitions, that he saw the walls scaled off and the signs of all those objects which he had carried off and which belonged to the house, which had been covered with mortar. There was the top of the cistern; from the garden there had been carried off the flowers and the bricks, and the water tank and its piping was gone. That in pulling away that water-closet, the cupboard, the partitions and the

piping the walls were pierced and the holes filled up with mortar of a different sort. Besides he took away the coach house from the yard of the house. That from the court they carried off the cistern cover, the coach house and besides the garden. From the bathroom they carried off the water-closet and the bath, and have perforated the walls, pulling out the nails and where there were pipes they have put on the walls a different sort of paint. In the places where the servants' privy was they have done the same; and also where there was a cupboard and have covered it up with mortar. And inside the house where they have pulled out the picture frames, the mirrors, and the portraits they have scaled off the walls where they were placed and caused expense. They have taken away also the water tank which was on the roof with the piping attached. That it is known that all these things were fastened to the wall because they have covered up the places with mortar, and the patches can be seen. That the employes of Roig had taken away the pump, and taken down the water tank. That he bought the house with all its appurtenances.

### TESTIMONY OF DON ANTONIO ROIG, DEFENDANT.

"That he formerly lived in a house of Don Ramón Pou. That when he went to live in that house it was in an uninhabitable condition; and on this account had been abandoned by Don Juan Vías Ochoteco. That he made on this house improvements for his own convenience. That he changed the roof entirely. That he left the roof there when he went away. That he also painted the house, left it so when he vacated. That he also erected a wall which divided it from the court room; that he left it there and it is there still. That with respect to the interior of the house he made other improvements; for example, he had a room at the end at the house where formerly it appears that there was a bath which was broken and only served to put flowers in the court, and there he made another bath; that it was a tin bath, that which we call in the United States a "bath." That he was able to place his bath there without damaging the house where it was nailed down. That he also placed there a water-closet, without any injury to the house. That the privy was in very bad condition; he repaired it. That he made a small screen and a partition in order that there might be more privacy for the servants. That he also made a cupboard, that the cupboard was movable, that he took from the house of Faura where he had it in order to carry it there, that he also placed a water tank on the roof with pipes without injury to the house. That he made general repairs in the house before he

went to live there, for account of Don Ramón Pou, the owner. The house was in very bad condition and on that account it had been vacated by plaintiff's attorney. I was living in the house of Mr. Faura but had to vacate it on account of his marriage, and Mr. Toro offered me the house of Mr. Pou. He said it was in very bad condition and authorized me to make such improvements as might be necessary and I did so, rendering an account to Mr. Pou. I made the improvements which Mr. Toro as the agent of Mr. Pou had authorized. The account rendered to Mr. Pou did not include the coach house, the water-closet and the bath. The witness stated that he had a letter from Mr. Toro authorizing him to take away all those things. He did not show this letter to the plaintiff because he did not have an opportunity.

### TESTIMONY OF DON JUAN VÍAS, PLAINTIFF'S ATTORNEY.

"That he lived in the house in question at one time, just before defendant, and left it voluntarily. That during the time he lived there, the house had no coach house attached, nor was there any water tank, nor water-closet, nor was there any partition in the privy; that there was an iron bathtub, almost useless, in the courtyard; that there was no serviceable bathtub; that there was a pump in the cistern, he is quite sure of that, but that it was some time serviceable and at other times useless. That he does not remember whether or not there was a pantry, that he believes there was no cupboard. That this was the same house afterwards occupied by Roig."

Article 487 of the Civil Code referred to in the said letter reads as follows:

"The usufructuary may make, on the property given in usufruct, whatever improvements he deems proper, either for a useful purpose or for pleasure, provided he does not change its form or substance; but he shall have no right to be indemnified therefor. He may, however, remove the said improvements, if it be possible to do so without damage to the property.

The appellant replies on articles 487 and 488, and 1476 of the Civil Code, which he claims have been improperly interpreted by the trial court. Article 488 has no application to the case at bar; since the tenant is not seeking to claim the benefit of it and the owner has no rights which rest on this article.

Article 1476 gives the tenant, in this case the defendant, the full benefit of article 487; and thus secures him in the right claimed "to remove the improvements" which he had made on the house, "if it be possible to do so without damage to the property."

No damage of any consequence is shown to have been done by the removal. Some nail holes were patched with a different sort of mortar, and some paint was used, which it is claimed did not harmonize with the former coat on the walls. But no pecuniary measure is proven to these damages if they may be so called, and they seem to present a point for the proper application of the legal maxim: *"De minimis nono curat lex."* (Broom's Legal Maxims, 142 *et seq.*)

For these reasons no error appears to have been incurred in the court below and the judgment should be in all things affirmed .

*Affirmed.*

Justices Hernández, Figueras and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.